IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                No. 2:18-cr-2739-KG

EMANUEL FERMAN,

    Defendant.


### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court upon Defendant's Motion to Dismiss (Doc. 27), filed October 9, 2018, and Supplement to Motion to Dismiss (Doc. 28), filed October 17, 2018 (collectively "Motions to Dismiss"). On October 29, 2018, in accordance with 28 U.S.C. § 636(b)(1)(B), these motions were referred to United States Magistrate Judge Kevin R. Sweazea to conduct any necessary hearings and recommend an ultimate disposition. *See Order of Reference*, ECF No. 30. Judge Sweazea heard the matter on November 28, 2018, and, having considered the parties' briefing and oral argument, the undersigned recommends that the Court DENY Defendant's Motions to Dismiss.

### Introduction and Background

This case has its inception in deportation proceedings which commenced in November 2004. The relevant timeline is as follows.

**September 17, 1990**:   Defendant is convicted of Burglary of a Vehicle (Texas Penal Code 30.04). (Doc. 31-1, pp. 1-2).

**October 8, 2004**:     Defendant is convicted of Sexual Assault (Texas Penal Code 22.011). (Doc. 31-1, pp. 3-4). Shortly after his conviction, Defendant is transferred to an immigration detention facility on the ground that he is subject to

|                    | removal for being convicted of an aggravated felony for which the term of imprisonment ordered is at least one year. (Doc. 31, p.3). |
|---|---|
| **November 1, 2004**: | Defendant received a Notice to Appear ("NTA") and Notice of Rights and Request for Disposition. In the date and time fields for the hearing, the NTA indicates "date to be set" and "time to be set." (Doc. 31-2, pp. 1-3). |
| **November 9, 2004**: | Defendant received a Notice of Hearing indicating that the removal hearing was set for November 10, 2004 at 8:30 a.m. (Doc. 31-2, p. 4). |
| **November 10, 2004**: | Defendant appeared at the November 10, 2004 hearing. The hearing was rescheduled for November 16, 2004 at 10:00 a.m. Defendant received the Notice of Hearing for the November 16, 2004 hearing. (Doc. 31-3, p. 1). |
| **November 11, 2004**: | Marcela Garcia entered a notice of appearance (as an accredited representative with the United Neighborhood Organization) on behalf of Defendant. Defendant signed the notice of appearance. (Doc. 38, Ex. A). |
| **November 12, 2004**: | Defendant's burglary conviction was added to Defendant's charges via a document titled Additional Charges of Inadmissibility/Deportability. The document alleges that Defendant is deportable because he has been convicted of two or more crimes involving moral turpitude. (Doc. 31-3, pp. 3-4). |

On November 16, 2004, Defendant appeared, in custody, before an immigration judge ("IJ") for his deportation hearing. (Doc. 47-1, Ex. 1). At the hearing, Defendant was represented by attorney Jose Moreno who entered his appearance in place of Marcela Garcia. (*Id.*). At the conclusion of the hearing, Defendant, through counsel, conceded to deportability and waived his right to an appeal. (*Id.*). Consequently, Defendant was ordered removed from the United States to Mexico. That same day, Defendant left the United States, on foot, and returned to Mexico. (Doc. 31-4).

On March 18, 2012, Defendant reentered the United States and was subsequently arrested. Defendant was charged with illegal reentry on April 11, 2012, and, on April 4, 2013, he was sentenced to sixty-four months in prison followed by three years of supervised release. (Doc. 1, p. 2; Doc. 31-5, pp. 2-3). On November 16, 2016, following his prison term, Defendant

2

was removed from the United States for the second time. (Doc. 1, p.2). On or about June 22, 2018, Defendant, again, reentered the United States and, on August 22, 2018, he was indicted on one count of Reentry of a Removed Alien in violation of 8 U.S.C. §§ 1326(a) and (b). (Doc. 19). Defendant now asks the Court to dismiss his August 22, 2018 Indictment, arguing that his 2004 order of deportation is invalid.

**Analysis**

The statutory framework for challenging a prior order of deportation in a prosecution for Reentry of a Removed Alien is found in 8 U.S.C. § 1326(d) which provides:

> (d) Limitation on collateral attack on underlying deportation order
> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) unless the alien demonstrates that--
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d)(1)-(3).

Accordingly, a defendant may "mount a collateral attack against a prior deportation order in response to an illegal reentry prosecution," *United States v. Adame-Orozco*, 607 F.3d 647, 651 (10th Cir. 2010), *only* if he can establish that he (1) exhausted administrative remedies; (2) was deprived the opportunity for judicial review; and (3) that the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d)(1)-(3). "Because a final deportation order enjoys a presumption of regularity," the burden is on the defendant to "prove each of § 1326(d)'s elements to overcome the presumed legality of the earlier deportation order." *Adame-Orozco*, 607 F.3d 647, 651 (10th Cir. 2010).

Importantly, Congress enacted 8 U.S.C. § 1326(d) to limit collateral attacks on deportation orders. (H. Rept. 104-22 p. 6, 16). Consequently, such attacks are available only to those defendants who exhausted administrative remedies and can show that they were subject to "procedural errors ... so fundamental that they may functionally deprive the alien of judicial review." *United States v. Aguirre-Tello*, 353 F.3d 1199, 1204 (10th Cir. 2004) (citing *United States v. Mendoza–Lopez*, 481 U.S. 828, 839 n. 17. (1987)). Defendant's challenges to his 2004 deportation order fail to fall within these carefully crafted boundaries.

### A. Defendant's Arguments

In support of his request for dismissal, Defendant cites to numerous alleged irregularities and deficiencies throughout his deportation proceeding which, he believes, satisfy, or excuse him from satisfying, all three prongs of § 1326(d). First, Defendant argues that his November 1, 2004 NTA did not include a date or time to appear and thus, per 8 U.S.C. § 1003.15, the IJ was never vested with jurisdiction over his case. Defendant next avers that he did not receive the November 12, 2004 Additional Charges of Inadmissibility/Deportability, depriving him of notice. Defendant further claims that his deportation hearing was not held in compliance with his Notice of Rights and Request for Disposition. Defendant also argues that his convictions for Sexual Assault under Texas Penal Code 22.011 and Burglary of a Vehicle under Texas Penal Code 30.04 are not removable offenses and that the immigration judge failed to advise him that he was eligible for voluntary departure. Finally, Defendant claims that he did not agree to be represented by Attorney Moreno, explaining that the attorney was "a random interloper, who, posing as [his] legal representative, waived away every single one of [his] legal rights." (Doc. 38, p. 6).

### B. 8 U.S.C. § 1326(d)

Recognizing that he must overcome the § 1326(d) hurdle in order to receive his requested relief, Defendant divides his arguments amongst the three prongs of the statutory provision. Although Defendant focuses first, and primarily, on the third prong—arguing that his deportation proceeding was fundamentally unfair—the Court will address each element of §1326(d) in the order found in the statute.

### 1. Exhaustion of Administrative Remedy of Appeal

Upon entry of an order of removal, whether written or oral, a defendant has thirty days to file an appeal with the Board of Immigration Appeals. 8 C.F.R. § 1240.15. During the November 16, 2004 hearing, Defendant waived his right to appeal the deportation order. And, per the Tenth Circuit, "[a]n alien who knowingly waives the right to appeal an immigration judge's order of deportation fails to exhaust administrative remedies under § 1326(d)(1)." *United States v. Chavez-Alonso*, 431 F.3d 726, 728 (10th Cir. 2005). Interestingly, Defendant admits that he did not exhaust his administrative remedies; however, he argues that he was not required to do so. Here, Defendant asserts three arguments in support.[1]

Defendant first contends that he did not receive notice of the Additional Charges of Inadmissibility/Deportability, dated November 12, 2004, prior to the November 16, 2004 hearing. From this, Defendant claims that he did not "receive notice of the charges against him and was therefore never in a position to challenge the determination that his conviction was an aggravated felony and/or crime involving moral turpitude." (Doc. 27, p. 16). Defendant concludes, without explanation or citation to legal authority, that the alleged lack of notice excuses him from the exhaustion requirement. *See Defendant's Motion to Dismiss*, ECF 27, p. 16.

---

[1] The Court addresses two of Defendant's arguments in this section and addresses his last argument below in connection with the Court's discussion of Defendant's collateral attacks on his underlying convictions.

Then, in his reply brief, Defendant raises an additional argument; namely that Attorney Moreno waived away all of Defendant's rights without his consent. Defendant asserts that he never agreed to be represented by Attorney Moreno and that the attorney had no knowledge of his case.[2] (Doc. 38, pp. 6-8). The Court "generally do[es] not consider issues raised for the first time in a reply brief." *Sadeghi v. I.N.S.*, 40 F.3d 1139, 1143 (10th Cir. 1994). However, it will make an exception in this case as both of Defendant's arguments are somewhat intertwined.

While neither argument is a model of clarity, it appears that Defendant is attempting to contend that the conduct of the hearing, including proceeding on the new charge, violated his right to due process of law which, in turn, nullified his waiver of appeal. Setting aside the tenuous link between due process violations and exhaustion requirements, the Court finds that Defendant's due process allegations are without merit.

The essence of due process is notice of a charge or claim and the opportunity to be heard. *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 325 (10th Cir. 1984). And, the record of hearing demonstrates that Defendant received notice of the charges through his representative and in person during the November 16, 2004 hearing, and had the opportunity to be heard on the charges.

**The Court:** "They've also lodged additional charges. So I'm going to mark that additional charge Exhibit 3. Do you have a copy of that?" **Attorney Moreno:** "Oh, the new charge, yes, Your Honor." **The Court:** "Do you want some time to prepare on that?" **Attorney**

---

[2] In his Reply, Defendant refers to Attorney Moreno as "Mr. Moreno" and claims that Mr. Moreno was not an authorized immigration representative. (Doc. 38, pp. 6-7). At the November 28, 2018 hearing, however, Defendant conceded that Jose Moreno was an attorney. And, while Defendant did suggest that, attorney or not, Jose Moreno might not have been permitted to appear in immigration court, he neither elaborated on this nor offered any proof to support his contention.

**Moreno:** "Your Honor, can I have just a moment with, uh…". **The Court:** "Sure." **Attorney Moreno:** "…my client just…". **The Court:** "We can go off the record." (Doc. 47-1, Ex. 1).

The record of hearing then reflects that the IJ went off the record, and Attorney Moreno presumably consulted with Defendant. (*Id.*). The IJ then went back on the record and described the charges of deportability brought against Defendant. In response, Attorney Moreno made the following statement. **Attorney Moreno:** "Uh-huh. Your Honor, based on our conversations with our client and on the – or knowledge of the facts that have come to our attention, at this time we would concede deportability." (*Id.*).

From the exchanges between the IJ and Attorney Moreno during the hearing, both before and after the IJ went off the record, the Court concludes that the notice of charges was served on Defendant's representative prior to the November 16, 2004 hearing, and that Attorney Moreno and Defendant discussed those charges and the facts underlying each of the charges during the hearing recess. Defendant then elected to concede to deportability rather than have a continuance of the November 16, 2004 hearing or challenge the evidence of deportability during the hearing. Therefore, even if, as Defendant argues, he was not aware of the new charges until the November 16, 2004 hearing, that fact does not excuse Defendant from exhausting administrative remedies pursuant to 8 U.S.C. §1326(d)(1).

The Court further finds that Defendant consented, at the very least implicitly, to be represented by Attorney Moreno during his deportation hearing. At no time during the hearing did Defendant object to Attorney Moreno's representation or to anything stated on the record by Attorney Moreno. And, Defendant could have accepted the IJ's offer of additional time to address the new charge, or requested new representation, but he chose not to do so. Additionally, Defendant's Declaration is void of any statements regarding Attorney Moreno's

representation or that suggest Defendant unknowingly and/or unwillingly waived his right to an appeal. (Doc. 27-7). In fact, Defendant must have been prepared for the outcome of the hearing as he left the United States, on foot, to Mexico that same day. (Doc. 31-4, p. 3). As Defendant has not carried his burden to prove that he exhausted his administrative remedies in accordance with 8 U.S.C. § 1326(d)(1), his request to dismiss the August 22, 2018 Indictment necessarily must fail.

### 2. Opportunity for Judicial Review

The Court finds it worth mention that Defendant also failed to show that he was deprived the opportunity for judicial review. Here, Defendant attempts to satisfy this prong by raising the same arguments the Court rejected in the above discussion on administrative exhaustion.[3] In addition, Defendant ignores the fact that all of the alleged infirmities which he now raises in his Motions to Dismiss could have been addressed via a timely filed administrative appeal. For the same reasons the Court found that Defendant had failed carry his burden to prove exhaustion of administrative remedies, the Court finds that Defendant has not carried his burden to demonstrate he was deprived of the opportunity for judicial review.

### 3. Fundamental Unfairness

Finally, although Defendant spends the bulk of his Motions to Dismiss arguing that his removal hearing, and subsequent order of removal, were fundamentally unfair, this argument, too, must fail. In order for a defendant to prove that his deportation hearing was fundamentally unfair, he must show that his due process rights were violated by defects in the proceeding and

---

[3] The one difference is that Defendant cites to *United States v. Mendoza-Lopez*, 481 U.S. 828, 839 (1987) for the proposition that "Courts must allow collateral challenges of deportation proceedings where the original administrative proceeding 'effectively eliminate[d]' a deportee's right to obtain judicial review. Defendant, however, does not tie this statement to any facts and he fails to recognize that *Mendoza-Lopez* was superseded by statute. *See United States v. Rivera-Nevarez*, 418 F.3d 1104, 1108 (10th Cir. 2005) ("In response to *Mendoza-Lopez*, Congress enacted § 1326(d), which establishes three requirements that an alien must satisfy in order to collaterally challenge a removal proceeding as a defense to a criminal prosecution for illegal reentry.").

8

that he suffered prejudice as a result of these defects. *Aguirre-Tello*, 353 F.3d 1199, 1204-05 (10th Cir. 2004). To establish prejudice, the defendant must show that, but for the flawed hearing, there is a reasonable likelihood that he would have obtained relief from deportation. *Id.* at 1209.

As discussed above, the record establishes that Defendant received proper due process. Accordingly, the absence of violations vitiates any claims of prejudice. Furthermore, all of Defendant's arguments as to fundamental unfairness are essentially collateral attacks on the underlying deportation order. Specifically, Defendant addresses his NTA, whether he was provided with a list of possible representatives, the timing of the hearings, the alleged short notice of the new charge filed November 12, 2004, whether his convictions for Sexual Assault and Burglary of a Vehicle were removeable offenses, and that the IJ failed to advise him that he was eligible for voluntary departure. And, because the Court has found that defendant failed to demonstrate that he exhausted his administrative remedies, or that he was deprived an opportunity for judicial review, these arguments are foreclosed by the express terms of 8 U.S.C. §1326(d). *Adame-Orozco,* 607 F.3d 647 (10th Cir. 2010). Even so, the Court will briefly address Defendant's collateral attacks, below.

### a. Collateral Challenge to the NTA

It is undisputed that the November 1, 2004 NTA was lacking a specific hearing date and time and instead stated "a date to be set" and "a time to be set" in the date and time fields of the document. Defendant argues that this deficiency renders void his 2004 deportation order. Here, Defendant cites to *Pereira v. Sessions*, 138 S. Ct. 2105 (2018) for the proposition that an IJ does not have jurisdiction over a removal proceeding unless and until a notice to appear precisely in compliance with 8 U.S.C § 1229 has been filed. Defendant argues that a notice without a date

9

and time to appear is insufficient to confer jurisdiction upon the court. *See* 8 C.F.R. §1003.14(a) (explaining that jurisdiction vests when a charging document, i.e., an NTA, is filed with the immigration Court). While the Court agrees that Defendant's NTA did not include the required date and time information, the Court does not find that the missing date and time are fatal to the order under review.

In *Pereira*, the Supreme Court considered the "narrow question" of whether an NTA which fails to specify the time and date of a hearing is sufficient to trigger the stop-time rule. *Pereira*, 138 S. Ct. 2105, 2110 (2018). The Court concluded that absent time-and-place information, the notice "is not a 'notice to appear' that triggers" the rule. *Id*. at 2115. In so determining, the Court explained that:

> Conveying such time-and-place information to a noncitizen is an essential function of a notice to appear, for without it, the Government cannot reasonably expect the noncitizen to appear for his removal proceedings. To hold otherwise would empower the Government to trigger the stop-time rule merely by sending noncitizens a barebones document labeled 'Notice to Appear,' with no mention of the time and place of the removal proceedings, even though such documents would do little if anything to facilitate appearance at those proceedings.

*Id*. Despite the Court making multiple references to the "narrow question" before it, *see id.* at 2110, 2113, Defendant asks this Court to read into *Pereira* a broad holding that NTAs lacking time-and-place information are ipso facto invalid and thus divest the immigration court of subject matter jurisdiction.

In support, Defendant relies on one decision from the Eastern District of Washington, *United States v. Virgen-Ponce*,[4] and two from the Western District of Texas, *United States v. Zapata-Cortinas* and *United States v. Pedroza-Rocha*,[5] which applied this expansive reading of

---
[4] *United States v. Virgen-Ponce*, 320 F. Supp. 3d 1164, 1166 (E.D. Wash. July 26, 2018).
[5] *United States v. Zapata-Cortinas*, No. SA-18-CR-00343-OLG, 2018 WL 4770868 (W.D. Tex. Oct. 2, 2018), *vacated* (Oct. 17, 2018), *opinion superseded on reconsideration*, No. SA-18-CR-00343-OLG, 2018 WL 6061076

10

*Pereira*. In these cases, the courts held that NTAs lacking time-and-date information are void and that judgments stemming from these defective notices are subject to independent collateral attacks on jurisdictional grounds, notwithstanding the limitations imposed by 8 U.S.C. § 1326(d). *Id.*

On November 20, 2018, however, the Western District of Texas reconsidered its holding in *Zapata-Cortinas* and determined that jurisdictional defects do not permit a defendant to bypass the requirements of § 1326(d). *United States v. Zapata-Cortinas*, No. SA-18-CR-00343-OLG, 2018 WL 6061076 (W.D. Tex. Nov. 20, 2018). More importantly, the Tenth Circuit has never applied *Pereira* beyond the scope of the Supreme Court's "narrow" holding and this Court declines Defendant's invitation to do so now.

The fact that the NTA does not include a specific date and time for the removal hearing may be considered within the framework of a § 1326(d) analysis, such as by considering whether a defendant who fails to appear at a removal hearing was prejudiced because the NTA did not inform the defendant of the time and date for the hearing. However, under the facts of this case, Defendant cannot show that the omission of a specific date and time from his November 1, 2004 NTA resulted in any prejudice. In *Pereira*, for example, the defendant never received notice of the time and date of his removal hearing. As a result, the defendant failed to appear and he was removed in absentia. *Pereira*, 138 S. Ct. 2105, 2112 (2018). In contrast, Defendant Ferman not only received written notice of the time and dates of his November 10, 2004 and November 16, 2004 hearings (Docs. 27-3 and 27-4), but he also appeared for both hearings. Ostensibly, the purpose of requiring the date and time of the hearing is to assure that the subject of the removal

---

(W.D. Tex. Nov. 20, 2018); *United States v. Pedroza-Rocha*, EP-18-CR-1286-DB, 2018 U.S. Dist. LEXIS 178633 (W.D. Tex. Sept. 21, 2018).

11

proceeding has the opportunity to appear at the hearing. Accordingly, in addition to the challenge to the NTA being an impermissible collateral challenge, Defendant has failed to show any prejudice by the failure of his NTA to include the time and date of his deportation hearing. Thus, under the facts of this case, Defendant's argument as to his NTA fails to provide grounds for him to collaterally attack the removal order without first complying with 8 U.S.C. §1326(d).

### b. Alleged Failure to Provide Defendant with a list of Representatives and Challenges to the Timing of the Deportation Hearings

Defendant also correctly indicates that the Notice of Rights and Request for Disposition ("NRRD") (Doc. 27-2) states that the first hearing would not be scheduled for sooner than ten days after the service of the NTA, unless otherwise requested. Defendant goes on to argue that the NTA was served on November 1, 2004, with the first hearing being scheduled for November 9, 2004, in violation of the terms of the NRRD. Defendant further argues that, per the NRRD, he should have been given a list of legal organizations that may represent him; but, despite multiple requests, he never received such a list.

Indeed, the law provides that the first hearing date in a deportation proceeding won't be scheduled for earlier than ten days after service of the NTA, unless requested in writing by the alien, so that the alien is permitted the opportunity to secure counsel. 8 U.S.C. §1229(b)(1). Likewise, immigration authorities are mandated to provide deportation defendants with lists of persons who have indicated their availability to represent pro bono aliens in removal proceedings. 8 U.S.C. §1229(b)(2).

The November 9, 2004 hearing was continued, and Marcela Garcia/the United Neighborhood Organization entered her appearance as Defendant's representative on November 10, 2004. Defendant did not introduce into evidence a transcript or audio recording from the

12

November 9, 2004 hearing so the Court is left to speculate about the reason for the continuance of the hearing. There is no evidence in the record regarding who requested the continuance, or for what purpose the continuance was ordered. While Defendant argues the continuance was so that the Government could "regroup" and file additional charges, the reason for the delay might have been to permit Defendant to obtain representation, which he did the next day. The second hearing was not held until November 16, 2004, which was fifteen days after the NTA was served on Defendant. There is no evidence that Defendant or his representative objected to the timing of the November 16, 2004 hearing. When given an opportunity by the IJ at the hearing for a continuance to prepare for the new charge, defense counsel requested, and was granted, a recess to confer with Defendant. Following the recess, neither Defendant nor his representative requested a continuance or objected to proceeding with the hearing. Accordingly, Defendant has failed to demonstrate that he was prejudiced by the timing of his removal hearings, or by the alleged failure by the Government to provide Defendant with a list of prospective legal representatives.

### c. Collateral Challenges to Predicate Criminal Offenses

In terms of Defendant's convictions, Defendant asks the Court to engage in a categorical analysis of Texas Penal Codes 22.011 (Sexual Assault) and 30.04 (Burglary of a Vehicle) and find that that his Texas Sexual Assault conviction does not qualify as an aggravated felony under 8 U.S.C. § 1101(a)(43)(A) and that neither conviction qualifies as a crime of moral turpitude. However, whether a conviction qualifies as a predicate offense for the purposes of removal is an issue that is properly raised on appeal from an order of deportation, *see, e.g.*, 8 C.F.R. § 1240.15; 8 U.S.C. § 1252(a)(2)(D), and not during the course of an 8 U.S.C. § 1326(d) review, unless Defendant has first satisfied the requirements of 8 U.S.C. §1326(d)(1)-(3). The Court has already found that Defendant fails in his 8 U.S.C. § 1326(d) challenge. The Court, then, is

without jurisdiction to reach the merits of Defendant's attempted collateral attack on his predicate convictions.

### d. Failure by IJ to Advise Defendant of Voluntary Departure

Defendant argues in his Supplement to Motion to Dismiss that the failure by the IJ to advise him of the potential option of voluntary departure violated his right to due process of law. (Doc. 28). Defendant goes on to argue, without citation to Tenth Circuit authority, that this alleged deficiency excuses him from complying with the requirements of 8 U.S.C. § 1326(d)(1) and (2) prior to launching a collateral attack. Once again, this is an issue that is properly raised on appeal from an order of deportation, *see, e.g.*, 8 C.F.R. § 1240.15; 8 U.S.C. § 1252(a)(2)(D), and not during the course of an 8 U.S.C. § 1326(d) review.

### Conclusion

Considering Defendant's arguments in accordance with § 1326(d), the Court finds that Defendant failed to exhaust his administrative remedy of appeal. This failure bars Defendant from waging a collateral attack on his 2004 deportation order in this criminal proceeding. *United States v. Rivera-Nevarez*, 418 F.3d 1104, 1107 (10th Cir. 2005).

### Recommended Disposition

For the reasons set forth above, the Court hereby RECOMMENDS that Defendant's Motions to Dismiss (Docs. 27 and 28) be DENIED.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension of time must be filed in writing no later than seven days from the date of this filing. A party must file any objections with the Clerk of the District Court within the fourteen-day period, together with any period for which an order is entered granting an**

**extension of time, if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE